## SCOTT v. GOODMAN.

District Court, N. D. Ohio, E. D.  February 2b, 1928.

No. 2465.

Bankruptcy ☞20(2)—State receiver held in contempt for failure to observe restraining order of bankruptcy court.

State receiver *held* in contempt for failing to observe restraining order of bankruptcy court, where, after service of the order and refusal of demand for the property by the trustee, he proceeded to consummate a sale of property of the estate to the president of bankrupt corporation on credit.

In Equity. In the matter of the Quaker City Fox Farms, Inc., bankrupt. Rule for contempt on I. H. Goodman, state receiver. Respondent adjudged in contempt.

See, also, 25 F.(2d) 175.

Sidney N. Weitz, of Cleveland, Ohio, for plaintiff.

Clyde Osborne, of Youngstown, Ohio, for defendant.

JONES, District Judge. This was a hearing upon rule to show cause why the defendant, I. H. Goodman, receiver of Quaker City Fox Farms, Inc., should not be held in contempt for disobedience of a lawful order of this court. The matter came first before the court on a petition for a temporary restraining order which was granted on December 29, 1927. At that time an order was entered enjoining the defendant, as state receiver, from proceeding with the administration of the estate of the Quaker City Fox Farms, Inc., in the common pleas court of Mahoning county until the further order of this court. It is quite apparent, from the record and duly authenticated papers and orders filed and entered in the common pleas court of Mahoning county immediately prior to and subsequent to this court's order, that the temporary restraining order entered by this court was not complied with by the state receiver. See Plaintiff's Exhibits 1, 2, 3, and 4.

On January 6, 1928, hearing upon the merits of the injunction against the state receiver was had and an order entered making the injunction permanent. The permanent order of injunction also directed the state receiver to surrender and turn over to the trustee in bankruptcy all of the property and assets of Quaker City Fox Farms, Inc. Coincident with the injunctive order, this court filed a memorandum setting forth the facts, in so far as they were presented, and a review of the law as it was understood to be applicable to conflict of jurisdiction between state courts and the United States District Court in bankruptcy. 25 F.(2d) 175. Although timely notice and full opportunity was given the state receiver to appear and to be heard before this last order was entered, no return, answer, or appearance was made by or for him.

It appears from the evidence that the state receiver made application for authority to sell assets, consisting of a certain quantity of fox pelts (Plaintiff's Exhibit 1), in the common pleas court on December 28, 1927, and on the same day obtained an order of sale (Plaintiff's Exhibit 2). On January 9, 1928, the state receiver filed a report of sale of the fox pelts on December 29, 1927, to A. V. Kenreigh for the sum of $7,500 (Plaintiff's Exhibit 3), one-half of which sum to be paid on or before January 15, and the remaining half of that sum to be paid on or before February 1, 1928. On the same day, an order was entered by the common pleas court approving and confirming this sale (Plaintiff's Exhibit 4). It will be noted that the sale under the receiver's order was not made until December 29, 1927, which was the day upon which he was enjoined by this court not to proceed with his administration; that the report of the sale and its confirmation were not made and entered until January 9, 1928.

Passing the question of the refusal of the state receiver to comply with the referee's order of December 21, 1927, and the denial of the trustee's application thereunder, made with due observance of comity to the court of common pleas for the surrender of the assets and property of the Quaker City Fox Farms, Inc., and passing, as well, the question as to whether the best interests of the estate required the pelting of the foxes, regardless of the known intervention of bankruptcy, my judgment is that the state receiver is in contempt for failure to observe the injunctive process of this court. It is clear from the evidence that the receiver had ample opportunity to withhold or withdraw from the sale of the fox pelts at a time when he must be charged with having had full knowledge of bankruptcy and the orders of this court.

The state receiver sold the fox pelts to Kenreigh, the plaintiff in the common pleas court receivership suit, and president and creditor of the Quaker City Fox Farms, Inc., on December 29, 1927, as before noted (Plaintiff's Exhibit 3), for $7,500, one-half of that amount to be paid on or before January 15, 1928, and the remaining half on or before February 1, 1928. According to the testimony of Kenreigh, he sold the pelts within ten days or two weeks thereafter for $8,400. He was unable to give the exact date of this sale, but, in any event, it appears that he made his first payment to the state receiver out of the money received by him from his sale of the pelts on or before January 15, 1928, as provided by the terms of the sale reported to and approved by the common pleas court.

At this hearing, and in subsequent communications, the state receiver, through his counsel, suggested that the receiver is now prepared to turn over the property and money in his hands, impressed with the costs and his attorney fees in the common pleas court. This proposal will not be adequate performance of the court's order. The full and fair value of the fox pelts on the day they were sold to Kenreigh is the measure of his obligation to absolve himself from the judgment of contempt. From the evidence there appears to have been no reason why the state receiver could not have sold the pelts upon as favorable terms as Kenreigh did within a few days thereafter. I deem the fair value of the fox pelts sold by the state receiver to Kenreigh, in contravention of the court's order, to have been the amount Kenreigh received for them, to-wit, $8,400.

It was urged that whatever action the state receiver took in the administration of the property was at the express direction of the common pleas court, whose officer he was, and to whom only he owed allegiance and obedience. If true, that fact, of course, would tend to absolve him from a willful disobedience of a lawful mandate of this court. I fully appreciate the embarrassment, both to the receiver and his counsel, arising out of such a situation, and it was with the hope that such a conflict might be avoided that this court gathered together authorities in memorandum form covering the question of conflict in jurisdiction. This is not a situation where a court asserts its superior jurisdiction out of any disregard or disrespect of another court; but it is the assertion of a jurisdiction which this court is not at liberty to refuse or surrender. See In re Diamond's Estate, 259 F. 70 (C. C. A. 6th). Courts are not, in these cases, to resent the jurisdiction taken by one which by the plain provisions of the law is entitled thereto. It is a matter of comity, not jealousy of jurisdiction, upon which a court's action should be based. Unfortunate collision between courts is to be regretted, but a considerate observance of the rule of comity should be adequate to avert such occurrences. There is seldom reason why courts should assume an arbitrary attitude where conflict of jurisdiction arises, although there often may be good reason to disagree. In this case, full opportunity for doing so was afforded. It seems to me that it would have been the better part of wisdom, and probably less embarrassing and burdensome to all, if those interested in retaining state jurisdiction had counseled the state receiver to appear and oppose the proceedings in this court by proper pleading and legal contention, even to the extent of prosecuting appeal to the Circuit Court of Appeals, upon an adverse ruling.

Without passing upon the questionable legality of the sale of the pelts by the state receiver to Kenreigh, who was plaintiff in that action, and also president and a creditor of the company, nevertheless such sale was clearly made and concluded in contravention and disobedience to the injunctive order of this court. An order may be entered adjudging the state receiver in contempt, and providing that he may be purged thereof by tendering to the trustee in bankruptcy all of the assets of the Quaker City Fox Farms, Inc., including the sum of $8,400, representing the fair value of the fox pelts sold by him, less such legitimate court costs and expenses in the court of common

pleas as were incurred up to December 29, 1927, reserving, however, to this court, the ultimate determination of allowance to the receiver and his attorney. See In re Diamond's Estate, supra, at page 74.

Upon the failure of the state receiver to comply with the provisions thereof within ten days from the entering of the order herein, the trustee in bankruptcy is directed to commence such appropriate proceedings for the enforcement of the obligations of the decree as may be proper and available in law.